OPINION OF THE COURT
Herbert A. Posner, J.
This is a motion by the plaintiffs, Herbert and Helen Feinstein, to set aside a jury verdict in favor of the defendants, Doctors Harold and David Goebel.
The Feinsteins claim, that they were severely prejudiced by the admission into evidence of two words of a hearsay statement contained within Herbert Feinstein’s hospital record. These two words were "drank heavy”. Plaintiffs had no objec *463 tion to the introduction by the defendant of the balance of the hospital record.
FACTS
Herbert Feinstein became a regular patient of the two defendant doctors in February 1973. In November 1975, Feinstein was diagnosed as having superficial phlebitis in the right thigh. This condition subsequently improved and he was discharged. On September 7, 1977, the patient was diagnosed as having a more severe case of phlebitis in the left leg. He was admitted the next day into Parkway Hospital in Forest Hills and was treated for the phlebitis condition. On September 17th, he was discharged from Parkway Hospital and a maintenance dose of Coumadin (an anticoagulant) was prescribed. He was directed to take one 5-milligram tablet a day. On September 20th, a prothrombin time test was taken and the results were within the normal range. Helen Feinstein claims that on September 22nd, she called the doctors’ office and spoke to Dr. David Goebel. She claims that she told him that her husband had experienced unusual facial bleeding that morning and that the doctor told her not to be concerned and to have him continue taking the Coumadin. Goebel denied ever receiving such a phone call. On September 24th, Feinstein was rushed to the emergency room of Flushing Hospital by his wife because of severe bleeding from the nose and mouth. He subsequently lost a major portion of his body’s blood supply before the doctors at Flushing Hospital were able to bring it under control. Feinstein claims this incident and his subsequent injuries resulting therefrom were solely caused by the negligence of the Goebels for failing to reduce or remove him from Coumadin therapy after the alleged September 22nd phone call.[1]
Dr. Harold Goebel testified that he received a phone call on September 24th from Mrs. Feinstein. She was calling from Flushing Hospital and was in a very agitated state. He. alleged that she told him that she and her husband had had an argument; that he drank heavily; that he had left the house; and had a car accident. Goebel alleges that he then spoke to *464 the house doctor at Flushing Hospital and was told that the house doctor had gotten the same information from Feinstein’s son. Mrs. Feinstein denied ever giving this information to Dr. Goebel; and the son denied ever giving the information to the house doctor. The Feinsteins have only one child, their son, Arthur. Arthur lives in Manhattan and was not a witness to any of the incidents that occurred to his father or his mother prior to the time that he arrived at Flushing Hospital.
Expert testimony at the trial, from both plaintiffs and defendants, indicated that ingestion of alcohol (other than moderate quantities) can either increase or decrease the prothrombin time. Therefore, a patient on Coumadin should not consume more than a minimal amount of alcohol. The defendants claim that the plaintiff’s profuse bleeding on September 24th, and the injuries resulting therefrom, were caused by his consumption of an excess amount of alcohol; and therefore, not due to any negligence on their part.
The two words "drank heavy” were contained in the hospital’s history in the following context: "More information was available from his son. According to him, patient had an argument with his wife and after that he 'drank heavy,’ drove his car and hit against a parked car and sustained some injuries. Since then he is bleeding profusely.”
ISSUE
Plaintiffs claim that the court erred in admitting "hearsay within hearsay within hearsay.” It is the plaintiffs’ contention that the first hearsay is that it is in a hospital record. The second hearsay is that it is recorded, not by a person who observed the event, but by a physician who obtained the information from someone else. The third layer of hearsay is that the doctor’s source of information is the son, who was not present to observe what is described — that his father had "drank heavy.” The plaintiffs further contend that there is no other information in the entire case which would tend to substantiate it. In addition, they claim that this history, if true, has nothing to do with diagnosis or treatment. The procedures for stopping the patient’s bleeding do not depend on a knowledge of what caused the bleeding.
THE LAW
In the seminal case of Johnson v Lutz (253 NY 124, 128 [1930]), Judge Hubbs held that the business record exception *465 to the hearsay rule "was not intended to permit the receipt in evidence of entries based upon voluntary hearsay statements made by third parties not engaged in the business or under any duty in relation thereto.”
While Johnson v Lutz (supra) referred to a police accident report, the Court of Appeals, in the context of hospital records, has held that: "entries in a hospital record may not qualify for admission in evidence unless made in the regular course of the 'business’ of the hospital, and for the purpose of assisting it in carrying on that 'business.’ The business of a hospital, it is self-evident, is to diagnose and treat its patients’ ailments. Consequently, the only memoranda that may be regarded as within the section’s compass are those reflecting acts, occurrences or events that relate to diagnosis, prognosis or treatment or are otherwise 'helpful to an understanding of the medical or surgical aspects of * * * [the particular patient’s] hospitalization.’ ” (Williams v Alexander, 309 NY 283, 287 [1955, Fuld, J.].)
There is no question that if the statement made to the house doctor was made by either one of the two plaintiffs that it would be admissible as an admission against interest. (Castro v Alden Leeds, Inc., 144 AD2d 613, 615; Gunn v City of New York, 104 AD2d 848, 849-850; Mikel v Flatbush Gen. Hosp., 49 AD2d 581, 582.) However, defendant introduced this statement not as an admission against interest, but as germane to diagnosis and treatment. Plaintiff claims that it was not germane to diagnosis and treatment because the treatment[2] would be the same regardless of what caused the bleeding. I do not agree. It is important for a doctor to know the cause of the patient’s condition. What if the internal bleeding was due to a tumor on the liver, for example? To stop the bleeding temporarily would not solve the underlying problem. What if the plaintiff had suffered internal injuries from the auto accident? There could be any number of reasons for the cause of internal hemorrhaging. Therefore, it is important for a doctor to know what factors may have contributed to the onset of the bleeding. As Judge Fuld stated in Williams v Alexander (supra, at 287), the law permits the introduction of hearsay statements that concern "acts, occurrences or *466 events that relate to diagnosis, prognosis or treatment or are otherwise 'helpful to an understanding of the medical or surgical aspects of * * * [the * * * patient’s] hospitalization. ’ ” (Emphasis added.)
The other aspect of the business record rule that must be considered in this case is whether the relator and the relatee had a duty to relate and record the information. There is no doubt that the house doctor did have such a duty. That is his job — to obtain a complete background history of a patient. Did the son have a duty to relate the information? Of course, he did. His mother was in an agitated and excited state; his father was semiconscious and on the verge of possible death from excessive internal bleeding. What person under these circumstances would not have a filial duty? The trustworthiness of the son’s statements to the house doctor are unquestionable. Where did the information come from? Obviously, it had to come either from his mother or from his father (assuming there had been an opportunity to speak to his father). Contrary to the plaintiffs’ attorney’s assertion that there was no other information in the entire case which would tend to substantiate that the son made the statement, there was testimony by Dr. Harold Goebel that the mother had relayed precisely the same facts to him when she called from the hospital. This tends to strengthen the degree of trustworthiness of the statement allegedly made by the son to the house doctor.[3]
CONCLUSION
Statements concerning the cause of an accident or injury or medical condition (contained in a hospital record) are admissible as admissions against interest or as germane to treatment if made by the party to the action. Statements made by a third party that are not germane to treatment are always inadmissible. Statements by a third party that are germane to treatment should be permitted only if the court finds that they satisfy a two-pronged test. (1) Did the person making the *467 statement have a duty to do so? (2) Examining the totality of the facts and circumstances, is the statement trustworthy? I find that the defendants satisfied both prongs of the test and therefore, the two words "drank heavy” were properly admitted into evidence.

. An overdose of Coumadin will cause increased prothrombin time and, consequently, hemorrhaging. The body must be able to form a clot within a normal time period. Therefore, it is essential that each individual’s prothrombin time be checked regularly; and if the patient experiences any unusual bleeding, Coumadin therapy should be stopped immediately.

. The standard treatment for internal hemorrhaging is to give the patient vitamin K intravenously.

. If the hospital record is admissible in its entirety, then it becomes an issue of fact for the jury as to whether the son actually made the statement in question. Obviously, the jury did not credit Helen Feinstein and Arthur Feinstein’s testimony that neither one of them had ever told anybody that Herbert Feinstein "drank heavily” shortly before his spontaneous bleeding began.