[942 NE2d 210, 917 NYS2d 1]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OLDALYS ORTEGA, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAURICE BENSTON, Appellant.

Argued October 20, 2010; decided November 23, 2010

## POINTS OF COUNSEL

*Center for Appellate Litigation,* New York City (*Jan Hoth* and *Robert S. Dean* of counsel), for appellant in the first above-entitled action. Where the complainant's medical records were generally admissible under the business records exception to the hearsay rule, the court's refusal, over defense objection, to redact a key statement within those records which did not meet the "necessary for treatment and diagnosis" requirement of that exception denied appellant a fair trial. (*People v Foster,* 27 NY2d 47; *People v Kohlmeyer,* 284 NY 366; *Williams v Alexander,* 309 NY 283; *People v Pitti,* 262 AD2d 503; *People v Goode,* 179 AD2d 676; *People v Singleton,* 140 AD2d 388; *People v Bailey,* 252 AD2d 815; *People v LaFontaine,* 93 NY2d 849; *People v Maher,* 89 NY2d 456; *People v Nieves,* 67 NY2d 125.)

*Cyrus R. Vance, Jr., District Attorney,* New York City (*Malancha Chanda* and *Richard Nahas* of counsel), for respondent in the first above-entitled action. The introduction into evidence of the portions of the victim's medical records disclosing that he had been forced to ingest drugs did not deprive defendant of a fair trial. (*People v Kennedy,* 68 NY2d 569; *Williams v Alexander,* 309 NY 283; *Davidson v Cornell,* 132 NY 228; *People v Edwards,* 261 AD2d 899; *People v Bailey,* 252 AD2d 815; *People v Goode,* 179 AD2d 676; *People v Torres,* 175 AD2d 635; *People v Archie,* 167 AD2d 925; *People v Taylor,* 80 NY2d 1; *People v Mooney,* 76 NY2d 827.)

*Legal Aid Society, Criminal Appeals Bureau,* New York City (*Paul Wiener* and *Steven Banks* of counsel), for appellant in the second above-entitled action. I. In this extremely close case the

court, over defense counsel's objection, erroneously allowed the prosecution to introduce highly prejudicial hearsay evidence from complainant's medical records that was completely irrelevant to her diagnosis or treatment. (*People v Kennedy*, 68 NY2d 569; *Williams v Alexander*, 309 NY 283; *People v Johnson*, 70 AD3d 1188; *Boucheron v Tilley*, 87 AD2d 983; *People v Thomas*, 282 AD2d 827; *People v Tarver*, 161 AD2d 1162; *People v Harris*, 132 AD2d 940; *United States v Iron Shell*, 633 F2d 77; *People v Goode*, 179 AD2d 676; *People v Crimmins*, 36 NY2d 230.) II. Where complainant's credibility was the central issue in the case, the court erred when it precluded defense counsel from cross-examining her to show that she had fabricated her testimony. (*Crane v Kentucky*, 476 US 683; *Chambers v Mississippi*, 410 US 284; *Delaware v Van Arsdall*, 475 US 673; *Davis v Alaska*, 415 US 308; *California v Green*, 399 US 149; *People v Gissendanner*, 48 NY2d 543; *People v Schwartzman*, 24 NY2d 241; *United States v Pedroza*, 750 F2d 187; *People v Ashner*, 190 AD2d 238; *People v Rufrano*, 220 AD2d 701.)

*Robert T. Johnson, District Attorney*, Bronx (*Robert R. Sandusky, III, Joseph N. Ferdenzi* and *Mary Jo L. Blanchard* of counsel), for respondent in the second above-entitled action. I. The trial court properly admitted the victim's medical records, as well as testimony from the doctor who diagnosed and treated her, and any allegedly improper hearsay was harmless. (*People v Henson*, 33 NY2d 63; *People v Greenlee*, 70 AD3d 966; *People v Moscat*, 3 Misc 3d 739; *People v Anonymous*, 192 Misc 2d 570; *Havell v Islam*, 186 Misc 2d 726; *People v Swinger*, 180 Misc 2d 344; *People v Patterson*, 93 NY2d 80; *People v Sorge*, 301 NY 198; *People v Nieves*, 67 NY2d 125; *Williams v Alexander*, 309 NY 283.) II. The trial court accorded defendant ample opportunity to confront and cross-examine the victim. (*People v Williams*, 81 NY2d 303; *People v Early*, 186 AD2d 377; *People v Cepeda*, 208 AD2d 364; *United States v Almonte*, 956 F2d 27; *Alford v United States*, 282 US 687; *People v Dickman*, 42 NY2d 294; *People v Schwartzman*, 24 NY2d 241; *Delaware v Van Arsdall*, 475 US 673; *People v Montes*, 67 AD3d 586.)

### OPINION OF THE COURT

Chief Judge LIPPMAN.

The common issue presented by these appeals is whether certain statements appearing in medical records were properly admitted at trial as relevant to diagnosis and treatment under the business records exception to the hearsay rule. We find no reversible error in either case and uphold the convictions.

*People v Benston*

Defendant, who was without another place to live, had been residing in the spare bedroom in complainant's apartment, at her invitation. Although their relationship was platonic at that time, they had been involved in a romantic relationship many years prior, beginning when complainant was 14 years old and lasting until she was 20 or 21.[1] Defendant paid complainant a portion of the rent, but she saved the money he gave her and planned to return it to him when he was able to move out.

On October 3, 2004, defendant informed complainant that he had taken five dollars in quarters from her coin purse for laundry and had replaced them with a five dollar bill. Complainant, upset because she suspected defendant had been going through her personal belongings, asked him to move out. Defendant became angry and threatened to kill complainant. He assaulted her and choked her—using first a scarf and then a leather belt. Complainant was able to free herself and called 911. After defendant fled the apartment, complainant finished packing his belongings and brought them to his brother's house. By the time complainant returned to her apartment, the police had arrived. One of the officers discovered defendant crouched in a corner of complainant's apartment. Defendant was then arrested and complainant was taken to the hospital.

Complainant reported to medical personnel that she had been strangled by an old boyfriend and that he had used a black leather belt. She was diagnosed by the attending physician with "domestic violence [and] asphyxiation." Prior to the introduction of the medical records at trial, defense counsel moved to redact, among other things, references to domestic violence, to the perpetrator's status as a former boyfriend and to the existence of a safety plan for complainant. The court ordered certain portions of the records to be redacted—specifically, any references to a history of abuse and to statements that complainant had asked the perpetrator to leave her home and that she had filed a complaint against him. The court did, however, permit references to domestic violence, the perpetrator's relationship to complainant, the description of the weapon and the existence of a safety plan. The court also denied defendant's motion in limine to preclude the attending physician from making repeated references to "domestic violence," instead requiring defense counsel to make specific objections if and when necessary.

---

1. Complainant was 36 years old at the time of the crimes.

In addition to the charges stemming from the October 3 incident, defendant was also indicted on charges pertaining to three subsequent episodes. On February 12, 2005, defendant, in violation of an order of protection, telephoned complainant repeatedly[2] and showed up outside the door to her apartment. Defendant allegedly caused a disturbance by kicking complainant's door and yelling for her male houseguest to leave the apartment. On February 16, 2005, defendant again approached complainant in violation of an order of protection by meeting her on the street when she got off the bus on her way home from work. During this encounter, defendant allegedly asked complainant not to testify against him and threatened to kill her. The following morning, defendant was waiting for complainant outside her apartment, again in violation of an order of protection, and accompanied her part of the way to work until she was able to elude him at a subway station. Defendant allegedly told her that he had had a razor with him the night before and thought about killing her and killing himself.

Defendant was acquitted of attempted murder in the second degree, but was convicted of assault in the second degree, attempted assault in the second degree, criminal possession of a weapon in the fourth degree, four counts of criminal contempt in the first degree, two counts of criminal contempt in the second degree, intimidating a victim or witness in the third degree, aggravated harassment in the second degree and harassment in the second degree.

The Appellate Division affirmed, finding that it was a proper exercise of discretion for the court to allow limited references in medical records and testimony to the effect that complainant "was diagnosed as having been subjected to domestic violence involving a former boyfriend," as those references were relevant to the proposed treatment (70 AD3d 479, 479 [1st Dept 2010]). A Judge of this Court granted defendant leave to appeal, and we now affirm.

## People v Ortega

Complainant, a 25-year-old man, encountered defendant outside a bodega in Washington Heights at about 4:30 A.M. on July 14, 2007. Although complainant initially asked defendant

---

**2.** A telephone company representative testified that defendant called complainant's home and cell phone numbers a combined total of 93 times that day.

to purchase marijuana for him, complainant testified that defendant and another man escorted him, at gunpoint, to a nearby building where they forced him to smoke crack cocaine from a glass pipe. The men also allegedly forced him to give them the PIN numbers to his bank cards. Subject to threats that he or his family would be hurt if he did not cooperate, complainant was allegedly forced to withdraw money from his bank accounts on several occasions over the course of the morning. Complainant was allegedly taken back to the nearby building and was again forced to smoke crack between the additional trips to obtain cash.

Complainant was eventually able to escape his captors shortly after noon that day. When he returned home, he was shaking, crying and incoherent. Complainant was taken to the hospital, where he told medical staff that he "was forced to smoke [a] white substance from [a] pipe." Later that night, defendant was arrested after being pulled over for an unrelated traffic offense. He was in possession of a small amount of crack, as well as complainant's bank cards, identification cards and cell phone.

Defendant's version of events differed significantly from complainant's. Defendant essentially testified that complainant voluntarily smoked crack with him and that complainant withdrew the money from his bank accounts of his own volition. Defendant also explained that complainant had willingly handed over his personal property and left it in defendant's possession.

Defendant was convicted of two counts of criminal possession of stolen property in the fourth degree. The Appellate Division affirmed, finding that even if the court should have redacted the statements at issue from complainant's hospital records, any error was harmless (64 AD3d 422 [1st Dept 2009]). A Judge of this Court granted defendant leave to appeal, and we now affirm.

### Business Records Exception

Under the business records exception to the hearsay rule,

"[a]ny writing or record . . . made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act,

transaction, occurrence or event, or within a reasonable time thereafter" (CPLR 4518 [a]).

This exception applies to criminal proceedings through Criminal Procedure Law § 60.10.

Generally, business records are deemed trustworthy both because they reflect routine business operations and because the person making the particular entry has the responsibility to keep accurate records that can be relied upon for business purposes (*see Williams v Alexander*, 309 NY 283, 286 [1955]). Hospital records, in particular, are trustworthy as they are "designed to be 'relied upon in affairs of life and death' " (*Williams*, 309 NY at 288, quoting 6 Wigmore, Evidence § 1707, at 36 [3d ed 1940]) and as they reflect the condition of a patient who has the clear motivation to report accurately.[3] Hospital records fall within the business records exception when they "reflect[ ] acts, occurrences or events that relate to diagnosis, prognosis or treatment or are otherwise helpful to an understanding of the medical or surgical aspects of . . . [the particular patient's] hospitalization" (*Williams*, 309 NY at 287 [internal quotation marks and citations omitted]). Where details of how a particular injury occurred are not useful for purposes of medical diagnosis or treatment, they are not considered to have been recorded in the regular course of the hospital's business (*see Williams*, 309 NY at 288).

For example, in *Williams*, plaintiff was struck by a car, but the parties disagreed over how the accident happened. Plaintiff's statement to a physician that he was hit after a car that had been stopped at an intersection was propelled into him by another vehicle was deemed inadmissible. The statement concerned the manner in which the accident occurred and was irrelevant to diagnosis or treatment (*see Williams*, 309 NY at 288-289).

We noted in *Williams* that, in certain situations, how the patient was injured "may be helpful to an understanding of the medical aspects of his [or her] case" (309 NY at 288). To that end, the analysis of some lower courts addressing the admissibility of medical records in domestic violence or child abuse situations may be instructive here. The Second Department

---

**3.** In this case we are presented with the most common scenario in which the information appears to have been derived from either medical personnel's firsthand observations or the presumptively reliable firsthand report of the patient to medical personnel.

found admissible medical records containing a statement by a complainant that she was attacked by friends of her former boyfriend who were trying to stop her from testifying against him in a domestic violence proceeding (see People v Greenlee, 70 AD3d 966 [2d Dept 2010], lv denied 14 NY3d 888 [2010]). The information was found relevant to treatment because it could be used to develop a discharge plan that would ensure the victim's safety (Greenlee, 70 AD3d at 967). Moreover, in a case involving child abuse, a nurse's testimony that an abused foster child told her that his foster mother caused his bruises was found proper because it was germane to diagnosis and treatment (see People v Caccese, 211 AD2d 976, 977 [3d Dept 1995], lv denied 86 NY2d 780 [1995]). At least one trial court has found medical records containing a diagnosis of domestic violence admissible due, in part, to the close association between the physical and psychological injuries typically involved (see People v Swinger, 180 Misc 2d 344, 349 [Crim Ct, NY County 1998]; see also People v Anonymous, 192 Misc 2d 570, 573-574 [Sup Ct, Bronx County 2002] [medical records containing the identity of an abuser in a child abuse case found relevant to treatment of the victim, including potential mental health referrals]).

The inquiry in each case before us remains whether the statements at issue were relevant to diagnosis and treatment. In Benston, defendant argues that several statements from complainant's medical records should not have been admitted. The specific statements that defendant contests are references to an "old boyfriend" as the perpetrator, the description of the case as involving "domestic violence," references to a "safety plan" for complainant and the description of the weapon as a "black" leather belt. Defendant also argues that this is not a case of domestic violence because he and complainant were living together in a platonic, landlord-tenant-type relationship.

The latter argument is without merit. Neither cohabitation nor a current romantic relationship is necessary for one individual to subject another to acts that will be considered domestic violence. Rather, domestic violence is characterized by a current, or former, intimate relationship between the parties (see e.g. CPL 530.11 [1] [e] [for family offense matters, "members of the same family or household" are defined to include "persons who are not related by consanguinity or affinity and who are or have been in an intimate relationship regardless of whether such persons have lived together at any time. Factors the court may consider in determining whether a

relationship is an 'intimate relationship' include but are not limited to: the nature or type of relationship, regardless of whether the relationship is sexual in nature; the frequency of interaction between the persons; and the duration of the relationship"]; Family Ct Act § 812 [1]; *see also* Social Services Law § 459-a [2]). The relationship between these two individuals, considering both their former relationship and their living situation at the time of the assault, is clearly one that is subject to classification as involving domestic violence. In this context, it is relevant for purposes of diagnosis and treatment that complainant's assault was at the hands of a former boyfriend.

■ The references to "domestic violence" and to the existence of a safety plan were admissible under the business records exception. Not only were these statements relevant to complainant's diagnosis and treatment, domestic violence was part of the attending physician's diagnosis in this case. With all that has been learned about the scourge of domestic violence in recent decades, we now recognize that it differs materially, both as an offense and a diagnosis, from other types of assault in its effect on the victim and in the resulting treatment. In this context, a doctor faced with a victim who has been assaulted by an intimate partner is not only concerned with bandaging wounds. In addition to physical injuries, a victim of domestic violence may have a whole host of other issues to confront, including psychological and trauma issues that are appropriately part of medical treatment. Developing a safety plan, including referral to a shelter where appropriate, and dispensing information about domestic violence and necessary social services can be an important part of the patient's treatment. Therefore, it was not error to admit references to domestic violence and a safety plan in complainant's medical records.

Contrary to defendant's argument, references to domestic violence and a safety plan do not lead to the conclusion that there has been a history of abuse. It is worth noting that the trial court here did not admit the medical records in their entirety. Rather, the court exercised its discretion by redacting certain portions of the records, most significantly the references to any history of abuse.

■ Defendant is correct that it was error to allow any references to the color of the weapon into evidence. Although the nature of the weapon used to strangle complainant—a leather belt—may have been relevant to diagnosis and treatment, that the belt was black had no relevance. References to the color of

the belt should not have been admitted, but any error in that regard was harmless. The evidence against defendant was overwhelming and there is no significant probability that, had the error not occurred, the outcome of the trial would have been different (see *People v Crimmins*, 36 NY2d 230, 241-242 [1975]).

In *Ortega*, the statement that complainant was "forced to" smoke a white, powdery substance was relevant to complainant's diagnosis and treatment. As the trial judge reasoned, under such a scenario, complainant would not have been in control over either the amount or the nature of the substance he ingested. In addition, treatment of a patient who is the victim of coercion may differ from a patient who has intentionally taken drugs. The references to complainant being "forced to" consume crack were admissible under the business records exception to the hearsay rule.

Defendant Benston's remaining argument concerning the alleged restriction of his right to confront a prosecution witness during re-cross-examination is without merit.

Accordingly, in each case, the order of the Appellate Division should be affirmed.

SMITH, J. (concurring). I agree with the result reached by the majority, but I think its analysis needs to be expanded.

The majority says that hospital records containing statements made by crime victims are admissible in criminal prosecutions under the business records exception to the hearsay rule. A number of Appellate Division cases say the same thing (see *People v Edwards*, 261 AD2d 899 [4th Dept 1999]; *People v Bailey*, 252 AD2d 815 [3d Dept 1998]; *People v Goode*, 179 AD2d 676 [2d Dept 1992]; *People v Torres*, 175 AD2d 635 [4th Dept 1991]; *People v Archie*, 167 AD2d 925 [4th Dept 1990]; *People v Singleton*, 140 AD2d 388 [2d Dept 1988]). Some of these cases, like the majority opinion, rely on *Williams v Alexander* (309 NY 283 [1955]). But the majority opinion, and these Appellate Division cases, ignore a gap in their logic: the business records exception makes the records themselves, but not hearsay contained within the records, admissible (*Johnson v Lutz*, 253 NY 124, 128 [1930]; *Flynn v Manhattan & Bronx Surface Tr. Operating Auth.*, 61 NY2d 769, 771 [1984]).

The hospital records before us present a "hearsay within hearsay" problem. They contain not only the written statements of the hospital employees who created the records—state-

ments to which the business records exception might well apply—but also the hearsay statements of the alleged victims. As a recent lower court decision put it: "Hearsay cannot be transformed into nonhearsay simply because a business routinely relies upon it and integrates it into its own records" (*Second Med., P.C. v Auto One Ins. Co.*, 20 Misc 3d 291, 297 [Civ Ct, Kings County 2008]). *Williams*, a civil case, presented no such problem. There, the statement contained in the hospital records was made by the plaintiff, was offered in evidence by the defendant, and would thus have been admissible as an admission by an adverse party (*People v Johnson*, 93 NY2d 254, 260 [1999]).

I agree that the statements in issue here are admissible, but the business records exception is not enough to support that conclusion. It is clear to me that we are implicitly recognizing, and that the Appellate Division cases cited above implicitly recognize, another hearsay exception, for statements made for purposes of medical diagnosis or treatment. That exception is explicitly recognized in the Federal Rules of Evidence (rule 803 [4]), and finds some support in New York case law (*see People v Thomas*, 282 AD2d 827, 828 [3d Dept 2001]; *Scott v Mason*, 155 AD2d 655, 657 [2d Dept 1989]). The leading treatises on New York evidence, however, suggest that the exception has not been adopted in New York, though they also suggest that it should be adopted (Fisch, New York Evidence §§ 995-996 [2d ed & 2008 Supp]; Prince, Richardson on Evidence § 8-610 [Farrell 11th ed]), and one of them describes recent cases that point in that direction (Fisch § 996, at 571, 2008 Supp at 680-681).

A hearsay exception for statements of this kind is justifiable. Statements to one's own doctor or other health care professional have an intrinsic guarantee of reliability, for only a foolish person would lie to his or her own doctor when seeking medical help (*see Davidson v Cornell*, 132 NY 228, 237 [1892]). And the exception, it seems to me, is essential to the majority's decision, consistent with uniform Appellate Division authority, that the evidence at issue in these cases is admissible. In other words, I think we are adopting the "medical diagnosis and treatment" exception to the hearsay rule in this case, and I think we ought to say so.

Applying the exception to these cases, I agree with the majority that all the statements in issue (apart from the harmless reference to the color of the belt used by Benston to attack his victim) were properly admitted. I have no difficulty with

*Ortega*: surely a doctor treating someone for narcotics poisoning would want to know the circumstances under which the patient came to ingest the drug. I find *Benston* a harder case, because it is much less obvious that a doctor treating a patient for attempted strangulation would care whether the patient's assailant was an ex-boyfriend or a stranger. I accept, however, the majority's conclusion that, when a victim of alleged domestic violence seeks treatment, it is the duty of those treating her to address not just her physical ailments, but any psychological and safety issues that her case may present.

This broad understanding of what is relevant to diagnosis and treatment will, I acknowledge, make quite a lot of hearsay evidence admissible: when a patient has a mental health problem, it may often be true that almost any statement about his or her history will be within the hearsay exception. But I see no reason to limit hearsay more strictly in situations like this. Often, as in both of the present cases, a broad hearsay exception will serve only to admit prior consistent statements, which are at worst cumulative of the witness's testimony in the courtroom. In other cases, particularly if they involve domestic violence, it may serve to admit prior inconsistent statements, not just for impeachment purposes, but as evidence-in-chief. This seems to me highly desirable: When an alleged victim testifies in court that her boyfriend or husband never laid a hand on her, a jury should be allowed to learn of and evaluate, without artificial restrictions, her previous statement to her doctor describing a brutal assault.

I see no unfairness to defendants in holding that prior statements of witnesses, whether consistent or inconsistent with their in-court testimony, are admissible if made for purposes of medical diagnosis or treatment. In either kind of case, the witness can be cross-examined, and if the statements are inconsistent the jury, aided by the cross-examination, can decide which to believe. These cases do not present the harder problem that will arise when the out-of-court statement was made by a person who does not testify at trial. The majority says nothing about that problem, and I too think it best to leave it for another day.

PIGOTT, J. (concurring). Although I concur in the results in *People v Ortega* and *People v Benston* because I think any error that occurred in those cases was harmless, I write separately to underscore two significant points. First, it must be noted that the content of a medical record proffered under CPLR 4518 is,

upon a proper objection, always subject to redaction of information that is irrelevant or not germane to the patient's medical diagnosis or treatment (*see People v Johnson*, 70 AD3d 1188, 1191 [3d Dept 2010]; *see also Montes v New York City Tr. Auth.*, 46 AD3d 121, 124-125 [1st Dept 2007] [trial judge has an obligation to redact from reports any parts thereof that, standing alone, would not be admissible, since the fact that certain conclusions are irrelevant is not changed merely because they are set forth in a business record]). To that extent, I agree with Judge Smith that "the business records exception makes the records themselves, but not hearsay contained within the records, admissible" (Smith, J., concurring op at 620).

Second, in my view, the majority in *Benston* interprets the business records exception too broadly by concluding that the "diagnosis" of domestic violence and references to a "safety plan" were properly admitted as part of the victim's diagnosis and treatment. While I recognize that domestic violence differs materially as an offense from other types of assault, the admission of this evidence can be error. A blanket rule allowing statements made by the complainant at the time of admission to the hospital can be just as harmful to a complainant's interests in some cases as its application here was to the defendant.

It is common knowledge that many domestic violence victims may mislead medical providers to protect their abusers, and are known for crafting cover stories to hide their victimization. This is also true in cases involving child abuse. Assuming a victim or a parent relays a cover story to medical personnel, would that record automatically be allowed in as proof for the defense, or should the trial judge be afforded the latitude to exercise discretion in redacting that portion of the record even though it is considered part of the diagnosis, care and treatment of the patient?

The mechanism of injury is almost always important, but hearsay statements that may identify (or misidentify) the alleged perpetrator or purport to explain the circumstances of an injury may, in certain circumstances, violate the Confrontation Clause of the Sixth Amendment. Thus, conclusory statements such as "domestic violence" while part of the medical record, in my view, should have been redacted because whether complainant was strangled by a former intimate partner or by a stranger was irrelevant to the type of treatment she received for her physical injuries. In a similar vein, formulation of a "safety plan" for use after the complainant left the hospital was not

pertinent to the diagnosis and treatment of her immediate injuries and is therefore not part of the record that is contemplated by the exception.

As to *People v Ortega*, the idea that the complainant was forced at gunpoint to ingest crack cocaine so that the defendant could convince him to turn over his ATM card seems to me unworthy of belief, and therefore, in my view, probably inured to the benefit of the defendant. However, absent *medical* testimony that the complainant being "forced" to ingest cocaine was relevant to diagnosis and treatment, it should have been excluded, not only because complainant's statement "extend[ed] . . . beyond the basic disclosure[ ] necessary or germane to diagnosis and treatment," but also because it bolstered complainant's testimony (*People v Benedetto*, 294 AD2d 958, 958-959 [4th Dept 2002] [even if counselor's notes had been certified, and a proper foundation had been laid for their admission as business records, they nonetheless contained hearsay declarations that bolstered complainant's testimony and therefore should not have been admitted]).

Judges CIPARICK, GRAFFEO, READ and JONES concur with Chief Judge LIPPMAN; Judge SMITH concurs in result in a separate opinion; Judge PIGOTT concurs in result in another opinion.

In each case: Order affirmed.