OPINION OF THE COURT
Gary F. Marton, J.
The premises at issue in this holdover proceeding is a rent-stabilized apartment. Petitioner landlord seeks to recover possession on the ground that the tenant of record, Thelma Williams, died and the respondents’ occupancy rights, if any, ended with her death.
Respondent Shaniquca Cole defends on the ground that she has a right to succeed to Williams’ tenancy on the statutory ground that she is a member of Williams’ immediate family and the premises were their primary residences for the two years preceding Williams’ death, which occurred on June 10, 2013. (See Rent Stabilization Code [9 NYCRR] § 2523.5 [b].)
The court began a trial during the course of which petitioner offered into evidence records of Williams’ hospitalizations in 2012 and 2013. Respondent objected and now moves to bar their introduction into evidence.
Petitioner offers records of Thelma Williams’ admissions to the Mount Sinai Medical Center. These include (A) a proxy questionnaire and acknowledgment dated November 15, 2012; (B) a one-page document bearing the legend “Discharge Notice,” dated June 3, 2013, and signed by “S Cole” as the “granddaughter” of Thelma Williams; (C) page 12 of a document that bears the legend “Discharge Summary” and that is at least 22 pages long; (D) pages 173 and 174 of a document that bears the legend “Progress Notes,” and which appears to include notes made by a social worker; and (E) a three-page document that bears the legend “Inpatient Factsheet,” that shows an admission date of May 17, 2013, and that includes one page that bears the legend “Transfusion Consent Form,” and appears to have been signed on May 23, 2013 by Shamel Cole.
Petitioner also offers records of Thelma Wiliams’ admissions to the Kings County Medical Center. These include (F) one *619 page that shows an admission date of June 20, 2012 and that the “person to be notified/next of kin” are Darene Williams and Charles Ford; (G) a two-page report dated June 28, 2012 by social worker Beyderman; and (H) a two-page report by social worker Choen dated May 3, 2013.
These documents include statements from which inferences adverse to respondent might be drawn. Perhaps the most significant of these are those set out in the discharge plan summary in (G) in which Beyderman reports, among other things, that “Pt. was diagnosed with plasma cell leukemia and has poor prognosis. Pt. was started on chemotherapy and will continue on bi-weekly basis post discharge,” “lives with family” and “Post discharge pt’s granddaughter will move in to assist with daily living. Pt. has a lot of family support, pt’s daughters and granddaughter were at the bedside and expressed commitment in offering needed support.” From this record petitioner would have the court infer that Shaniquca Cole was not living at the premises when the statement was made, i.e., less than one year before Williams’ death.
Respondent objects to the statements’ admission on the ground that they are hearsay, i.e., out-of-court statements offered for the truth of the matter asserted (see People v Buie, 86 NY2d 501, 505 [1995]; Jerome Prince, Richardson on Evidence § 8-101 at 497 [Farrell 11th ed 1995]). Petitioner counters that although the statements are hearsay, they are admissible because they are included in business records that CPLR 4518 makes admissible. Respondent replies that although hospital records are admissible as business records insofar as they include statements useful for diagnosis, prognosis, or treatment, they are not admissible otherwise, and that the portions of the records here that concern the preparation of a discharge plan are not admissible because they were not useful for diagnosis, prognosis, or treatment. Petitioner disagrees on the ground that statute (i.e., 10 NYCRR 405.9 [g] [1]; [b] [14] [i]) requires hospitals to prepare discharge plans and also on the ground that case law provides that statements in a discharge plan are admissible when the discharge plan is part of the patient’s treatment.
In Williams v Alexander (309 NY 283 [1955]), which concerned an automobile accident, the Court addressed squarely the issue of whether hospital records are admissible pursuant to the business records exception to the bar against hearsay. The defendant had offered into evidence the plaintiff’s descrip *620 tion of the accident’s occurrence as set down in hospital records. The Court reasoned that business records are deemed trustworthy both because they reflect routine business operations and because the person making the particular entry has the responsibility to keep accurate records that can be relied upon for business purposes (Williams at 286) and that hospital records in particular are trustworthy as they are “designed to be ‘relied upon in affairs of life and death’ ” (Williams at 288, quoting Wigmore, Evidence § 1707 at 36 [3d ed 1940]). The Court ruled that hospital records were admissible when they “reflect[ ] acts, occurrences or events that relate to diagnosis, prognosis or treatment or are otherwise ‘helpful to an understanding of the medical or surgical aspects of [the patient’s] hospitalization.’” (Id. at 287 [citations omitted].) The Court held that inasmuch as the description of the accident was unrelated to the plaintiff’s diagnosis, prognosis or treatment, the records were not admissible.
In People v Greenlee (70 AD3d 966 [2d Dept 2010], Iv denied 14 NY3d 888 [2010]), the Court held admissible medical records containing a statement by a victim that she was attacked by friends of her former boyfriend who were trying to stop her from testifying against him in a domestic violence proceeding. The Court found that the statement was admissible because it was relevant to treatment in that it could be used to develop a discharge plan that would provide for the victim’s safety.
In People v Ortega (15 NY3d 610 [2010]), the Court held admissible hospital records that included references to domestic violence and a post-discharge safety plan. The Court held that “[developing a safety plan, including referral to a shelter where appropriate, and dispensing information about domestic violence and necessary social services can be an important part of the patient’s treatment.” {Id. at 619.)
Here, respondent’s grandmother had been diagnosed with cancer and was to be treated post-discharge with chemotherapy administered biweekly. Formulating a discharge plan was, this court finds, “an important part of the patient’s treatment.” {Id.) The court holds that the hospital records are admissible.
Respondent argues that it is unjust to allow respondent’s right to succeed to the tenancy of the premises to depend on one or more statements that her now-deceased grandmother may not have made, and if made may have been made when her ability to think and to communicate may have been diminished by medications and/or by the receipt of the ominous *621 news that she had cancer, that she would have to undergo the rigors of chemotherapy, and that, regardless of the foregoing, her prognosis was “poor.” Respondent also points out that Beyderman may have misunderstood what Williams may have said, and that the circumstances under which Beyderman took the statement—possibly during a short interview at a hospital bedside surrounded by distraught relatives—may have fallen short of being conducive to accurate reporting. Unquestionably, absent an opportunity to cross-examine Beyderman[1] and Williams these possibilities cannot be explored.
In the not-so-different context of holdover proceedings predicated upon allegations of non-primary residence, statute— i.e., 9 NYCRR 2520.6 (u)—provides that “[although no single factor shall be solely determinative, evidence which may be considered in determining whether a housing accommodation ... is occupied as a primary residence shall include . . . any tax return, motor vehicle registration, driver’s license or other document filed with a public agency . . . .” These documents include hearsay, i.e., out-of-court statements that are offered for their truth, yet it is the ordinary course in non-primary residence trials for such documents to be received in evidence.[2]
Respondent’s arguments have considerable force. However, while they may degrade and reduce the probative value of the records, the court holds that the documents, upon an appropriate foundation being laid, are admissible. The court notes, no doubt needlessly, that by holding that the documents are admissible, the court has not determined that they deserve any particular probative weight, and the court notes as well that at the conclusion of the bench trial herein, the court’s decision will be based upon all of the evidence and that no single factor will be determinative.
Respondent’s motion is denied.

. Whether Beyderman will testify is not known at this time.

. See e.g. the many cases cited in Scherer, Residential Landlord-Tenant Law in New York § 8:212 (2014).