■ DOROTHY VEAL, Respondent, v NEW YORK CITY TRANSIT AUTHORITY, Appellant.—In an action to recover damages for personal injuries, the defendant appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Queens County (Posner, J.), entered May 7, 1987, as, upon a jury verdict, was in favor of the plaintiff on the issue of liability.

Ordered that the judgment is reversed insofar as appealed from, on the law and as a matter of discretion in the interest of justice, and a new trial is granted on the issue of liability, with costs to abide the event.

On October 29, 1981, the plaintiff was a passenger on a subway train operated and maintained by the defendant New York City Transit Authority. The plaintiff allegedly was caused to fall to the floor of the train, as the train came to a sudden stop. As a result of the fall, the plaintiff claimed she suffered various injuries.

At the trial, a motorman instructor for the defendant testified that he had investigated the "unusual occurrence" that had taken place on the train. He had ascertained that the train had gone into "emergency", soon after it had pulled out of the station at which the plaintiff boarded, thereby causing a sudden stopping of the train. The witness described the reasons the train could go into "emergency". The "most common" cause was a passenger or employee pulling one of the conductor's emergency cords which were located at one or both ends of each subway car. A train might also go into "emergency" if one of its tripping devices, located underneath the cars was activated by contact with an object on the roadbed. Further, the train also had a "deadman's feature" which would cause it to go into emergency in the event the motorman took both hands off the control, e.g., if he became incapacitated or for some other reason released the controls, the latter being an unlikely occurrence, in the witness's opinion.

This witness also explained the standard operating procedure a motorman is required to follow when a train goes into emergency: he must ascertain the cause of the stop by either walking through the train or onto the roadbed, depending on the air gauge reading. As to the "unusual occurrence" in this case, in the report of the train's motorman who was unavail-

able to testify at the trial, it was indicated that he went onto the roadbed and walked around the train, which acts were confirmed by the train's conductor, who testified at the trial. However, the motorman further indicated in his report that he could not ascertain what had caused the emergency situation.

On appeal, the defendant claims that it is entitled to a new trial on the issue of liability because of the trial court's improvident exercise of its discretion in denying the defendant's request to reopen its case and also certain errors in the trial court's instructions to the jury. We agree.

Despite the fact that this action was commenced in October 1982, it was not until about a month before the trial in April 1987 that the plaintiff first served several subpoenas seeking voluminous records concerning, *inter alia,* the train which was involved in the plaintiff's accident. While the parties agreed that the defendant's counsel would only have to produce the maintenance records for the train in question by the first day of the trial, he was unable to retrieve the records until the second day of the trial.

On that day, after the testimony of the three witnesses called by the parties was completed, at about 3:00 P.M., the defense counsel requested a short adjournment so that both sides could examine the subpoenaed records, which were being delivered to the court that afternoon, and a witness could be called to explain the records. The plaintiff refused to consent to an adjournment and the court declined to grant the request. Thereafter, at about 3:45 P.M., during the trial court's charge to the jury, the records were actually delivered to the court. At the conclusion of the charge, the trial court denied the defendant's motion to reopen its case to introduce into evidence the maintenance records. During the jury's deliberations, the defense counsel, at the request of the trial court, reviewed the maintenance records. At about 4:45 P.M., just prior to the jury being brought into the courtroom to render its verdict, the defense counsel reported his review of the records: "it *[sic]* shows that proper maintenance was made on each and every car for a reasonable period of at least a year prior to the accident and no occurrences like this one, unexplained short violent stops caused by operation in an emergency". The jury was then permitted to render its verdict, finding the defendant liable.

We find that under the circumstances, the trial court should have granted a short adjournment to permit the review of the maintenance records by both parties and the testimony of any

relevant witnesses. The testimony of the witnesses was completed in less than one day. Moreover, as the trial court noted, the records were simple to read and were reviewed by defense counsel in approximately one hour. Therefore, the plaintiff would not have been prejudiced by permitting a brief adjournment and the reopening of the defendant's case to introduce these maintenance records and any pertinent testimony *(see also, Lagana v French,* 145 AD2d 541; *Kennedy v Peninsula Hosp. Center,* 135 AD2d 788).

The failure to permit the reopening of the defendant's case was particularly prejudicial in light of the trial court's charge to the jury. Specifically, the trial court erroneously instructed the jury that "the mere happening of an accident does give rise to a presumption of negligence" and that the defendant had the "burden" of proving that the train was properly maintained by it *(see, Foltis, Inc. v City of New York,* 287 NY 108, 115; *Griffin v New York Cent. R. R. Co.,* 277 App Div 320, 323). In addition, while no specific res ipsa loquitur charge was given, the trial court did instruct the jury on a theory in the nature of res ipsa loquitur. However, this was error because the plaintiff failed to "establish control of the [train] by [the] defendant of sufficient exclusivity to fairly rule out the chance that the [incident] * * * was caused by some agency other than [the] defendant's negligence" *(Dermatossian v New York City Tr. Auth.,* 67 NY2d 219, 228; *see also, Ebanks v New York City Tr. Auth.,* 70 NY2d 621, 623). While no objection was taken to the jury instructions, this court may, in the interest of justice, review the issue when there are fundamental errors in the charge *(see, Rodriguez v Cato,* 63 AD2d 922, 923; *Di Grazia v Castronova,* 48 AD2d 249; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4017.09, at 40-96—40-97).

Accordingly, the matter is remitted for a new trial on the issue of liability. Bracken, J. P., Lawrence, Spatt and Harwood, JJ., concur.