■ RICHARD BROWN, Respondent-Appellant, v METROPOLITAN TRANSIT AUTHORITY, et al., Appellants-Respondents. [721 NYS2d 56] —Judgment, Supreme Court, Bronx County (George Friedman, J.), entered on or about March 29, 1999, which, following a jury verdict finding plaintiff 65% negligent and defendants 35% negligent, awarded plaintiff compensatory damages in the total amount of $317,678.50, unanimously reversed, on the law, without costs, and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

Plaintiff Richard Brown was a New York City Department of Environmental Protection (DEP) inspector who was responsible for repairing water leaks in City-owned properties. On February 2, 1994, he was called to assist in the investigation of water flowing into a cable room on the southbound platform of the

number 4 IRT, 149th Street subway station. Two New York City Transit Authority (NYCTA) workers had inspected the area and preliminarily concluded that a leak from a manhole was the cause. Because the leak appeared to have its source outside the subway system, a NYCTA plumbing supervisor and two DEP workers inspected the area. Although they were able to ascertain the size and shape of the leak, they could not conclusively pinpoint its source. The DEP workers called plaintiff, a supervisor, to assist in the investigation because he had greater expertise with this type of work. Plaintiff had previously investigated water leaks on NYCTA property, which had also required him to go onto track beds to make repairs.

To determine the source of this leak, plaintiff put his head to the ground above the station with an aquaphone. He then decided to inspect the cable room, and walked downstairs to the crowded station platform, accompanied by two NYCTA employees. Finding the cable room padlocked, the two NYCTA employees left the site. However, plaintiff remained on the platform and continued to look for the source of the leak. After noticing some water trickling out of the bottom of the cable room and from the walls and ceiling above the platform, plaintiff moved to the edge of the platform, looked to see if a train was coming, then leaned over the edge, with his back to the tunnel from which oncoming trains would approach the station. A downtown number 4 train entered from behind him, striking him in the back of the head, causing injury.

Plaintiff brought this action against the municipal defendants, alleging negligence in the ownership, operation, maintenance, and control of the subject subway station, and in failing to advise the motorman of plaintiff's presence on the platform. At trial, plaintiff argued that there should have been a flagman on the site, that the motorman should have been alerted to his presence, and that the NYCTA employees should not have walked away and left plaintiff, a DEP employee, alone on their property. The jury found defendants 35% liable for plaintiff's accident, and awarded plaintiff $317,678.50 in damages. Defendants appeal the liability finding. Plaintiff cross-appeals, contesting the adequacy of the damage award. We reverse, and dismiss the complaint.

Where, as here, the sole legal cause of plaintiff's injuries is his own reckless conduct, which showed a disregard for an obvious hazard, a defendant is not liable in negligence (see, Olsen v Town of Richfield, 81 NY2d 1024, 1026; Egan v A.J. Constr. Co., 94 NY2d 839; Pytel v New Jersey Tr. Auth., 267 AD2d 155 [defendant not liable where train struck intoxicated

plaintiff who ignored "no trespassing" signs, jumped from platform and fell asleep on train tracks]; *Grover v Town of Montour*, 252 AD2d 859; *Rice v New York City Hous. Auth.*, 239 AD2d 400; *compare, Tuttle v Anne LeConey, Inc.*, 258 AD2d 334 [issue of comparative fault raised where defendants advised plaintiff to reach high shelf by standing on a chair with wheels, although she specifically requested a stepladder]).

Plaintiff had experience working in and around subway platforms (*see, Egan, supra,* at 841; *Aviles v Crystal Mgt.*, 253 AD2d 607, *lv denied* 93 NY2d 804; *Stephen v Sico, Inc.*, 237 AD2d 709), and he was aware that trains were still running. He testified at trial that before his accident he had seen at least two trains come into the station, take on and discharge passengers, and pull away. However, after making only a visual check for trains, he leaned over the edge of the platform, with his back turned toward the incoming tunnel where trains would enter. This action was "so obviously fraught with danger that, by its very nature, it evince[d] a wanton disregard for the actor's own personal safety or well-being" (*Wright v New York City Tr. Auth.*, 221 AD2d 431, 432, *lv denied* 88 NY2d 806 [no liability where plaintiff stuck his head out of the motorman's window of a moving subway train]). Although we are not without sympathy for plaintiff's injuries, this is "one of those instances where a solitary conclusion may be drawn from [a] given set of facts, and where the question of legal causation may be decided as a matter of law" (*de Pena v New York City Tr. Auth.*, 236 AD2d 209, 210, *lv denied* 90 NY2d 808).

Plaintiff also argued that NYCTA is liable because its rules required that flag-waivers be provided in certain situations. However, the trial testimony here did not indicate that flag-waivers would be required for the work plaintiff was doing. While an internal agency rule may be introduced as evidence of the standard of reasonable care, violation of a rule requiring a standard of care higher than the common law cannot be a basis for defendants' liability (*Crosland v New York City Tr. Auth.*, 68 NY2d 165, 168-169; *Flynn v City of New York*, 258 AD2d 129, 137-138).

In sum, defendants had no duty to warn of a danger "that [could have been] easily recognized or discovered by the normal use of one's senses" (*Comeau v Wray*, 241 AD2d 602, 603; *DePasquale v Morbark Indus.*, 221 AD2d 409; *Weiner v Saks Fifth Ave.*, 266 AD2d 390). Concur—Nardelli, J. P., Tom, Mazzarelli, Wallach and Rubin, JJ.