[843 NYS2d 622]

Miguel J. Montes, Appellant, v New York City Transit Authority et al., Respondents.

First Department, October 23, 2007

## APPEARANCES OF COUNSEL

*Pollack, Pollack, Isaac & De Cicco*, New York City (*Brian J. Isaac, Alan M. Shapey, Glenn P. Dolan* and *Kenneth J. Gorman* of counsel), for appellant.

*Wallace D. Gossett*, Brooklyn (*Lawrence Heisler* of counsel), for respondents.

## OPINION OF THE COURT

KAVANAGH, J.

The infant plaintiff Miguel Montes, who was 11 years old at the time of the accident, was crossing the street when he was struck by a New York City Transit Authority bus. After trial, the jury found that defendants were not negligent.

The verdict is supported by a fair interpretation of the evidence (*see Nicastro v Park*, 113 AD2d 129, 133-135 [1985]; *McDermott v Coffee Beanery, Ltd.*, 9 AD3d 195, 206-207 [2004]), including the testimony of defendants' expert and defendant bus driver that the infant plaintiff darted into the crosswalk, against the light and in front of another bus that obstructed the driver's view, creating an emergency situation that left the driver without enough time to stop the bus before striking plaintiff (*see Rivera v New York City Tr. Auth.*, 77 NY2d 322, 327 [1991]; *Hassett v Budget Rent A Car of Fla.*, 209 AD2d 472 [1994]).

Contrary to the conclusions in the concurring opinion, the trial court did not err by refusing to admit into evidence all that was contained in a memorandum/report prepared by the Transit Authority during its internal investigation into the cause of the accident.

Much of what is in this report is factual and either was proven through the use of other evidence or involved issues which are not the subject of any meaningful dispute at trial. What was at issue is the admissibility of any of the conclusions set forth at the end of the document. Specifically, the report concludes as follows:

> The eleven (11) year old male youth ran against a
> red traffic signal in front of the moving bus;

The B/O failed to use caution, and to anticipate, while approaching a very active intersection;

The B/O failed to properly observe, and to recognize potential hazard;

The B/O failed to drive defensively by sounding his horn and stopping in a timely manner.

When read in the abstract, these findings lead one to conclude that the Transit Authority has found that the operator of the bus was negligent in the operation of this vehicle, and was, at least in part, at fault for the cause of this accident. However, there was sworn testimony before the trial court which established that the last three of these conclusions were in reality an assessment by a representative of the Transit Authority as to how the driver's operation of this vehicle measured up to the Transit Authority's internal rules and standards, and did not represent an opinion by the Transit Authority that the driver at the time of the accident had failed to use reasonable care. The Transit Authority's internal standards impose a code of conduct on its drivers that exceeds that of the common law by presuming that every accident is preventable, and that when one occurs, the driver must have to some extent been at fault (*see e.g. Veal v New York City Tr. Auth.,* 148 AD2d 443, 445 [1989]).

The concurring opinion takes the view that since the report does not expressly refer to this enhanced standard of care, it cannot be used either to clarify the report's conclusions or to determine their admissibility. Generally, business records are not self-proving, and determinations of their admissibility often require testimony of qualified witnesses familiar with how the documents are created (*see National States Elec. Corp. v LFO Constr. Corp.,* 203 AD2d 49, 50 [1994] [testimony required to determine admissibility of contractor's summary of damages]). Indeed, a trial court has broad discretion when ruling on the admission of evidence, and may "elicit and clarify testimony" in its attempt to control its courtroom (*see Messinger v Mount Sinai Med. Ctr.,* 15 AD3d 189, 189 [2005], *lv dismissed* 5 NY3d 820 [2005]; *Henriques v Kindercare Learning Ctr.,* 6 AD3d 220, 221 [2004]). This discretion allows the trial court to consider the circumstances by which a document was prepared in determining its relevance on the issue for which it has been proposed. Here, sworn testimony was given by an official with personal knowledge of the criteria used in preparing this docu-

ment—testimony which the trial court obviously found to be credible—which established that the report's conclusions were based on the Transit Authority's internal rules and practices, which in turn impose higher standards than the common law. As such, the opinions as rendered were not admissible to establish the driver's negligence (*see Karoon v New York City Tr. Auth.*, 286 AD2d 648 [2001]).

Moreover, while it is true as noted in the concurring opinion that the report is a business record, the business record statute "does not make admissible evidence which is otherwise inadmissible" (58 NY Jur 2d, Evidence and Witnesses § 465, at 257; *see Bostic v State of New York*, 232 AD2d 837, 839 [1996], *lv denied* 89 NY2d 807 [1997] ["(e)ven assuming that the exhibit was admissible under CPLR 4518, it is well settled that (t)he business records exception to the hearsay rule . . . does not overcome any other exclusionary rule which might properly be invoked . . . such as the requirement that the evidence sought to be introduced be relevant and material to the issue at hand" (citations and internal quotation marks omitted)]). A trial judge has the right, albeit the obligation, to redact from a report any parts thereof which, standing alone, would not be admissible. The fact that these conclusions are not relevant is not changed simply because they are set forth in a business record of the Transit Authority.

Equally important, there is no rational correlation between the conclusions as offered and the findings upon which they are based. For example, the report concludes "[t]he B/O failed to use caution, and to anticipate, while approaching a very active intersection." There are no factual findings listed in the report which would rationally support such a conclusion or reasonably lead to it. The only factual finding that is remotely related to this conclusion that is contained in the report states as follows: "The B/O first observed the male youth when he was already in front of the bus." That finding, if warranted, does not necessarily support the conclusion that the driver was negligent, nor is there any other explanation which explains the basis for this conclusion. Absent some rational connection supporting such inferences, the author of the report, if called to testify, would not have been allowed to give these opinions, assuming he was otherwise found competent to render them. The other arguments have been considered and found to be unavailing.

Accordingly, the judgment of Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered December 19, 2005,

upon a jury verdict in defendants' favor dismissing the complaint, should be affirmed, without costs.

CATTERSON, J. (concurring). The 11-year-old plaintiff was walking across the street when a Transit Authority (hereinafter referred to as TA) bus hit him. According to the plaintiff, he was in the crosswalk with the light in his favor when the bus which did see, or should have seen him in time to stop, drove through a red light and hit him. According to the defense, the plaintiff leaped into the crosswalk against the light, and the bus driver, whose view was blocked by another bus, had no time to stop. By a vote of 5-1 the jury found in favor of the defendants.

On appeal, the plaintiff argues, inter alia, that the trial court committed reversible error when it refused to admit a TA investigative report which found that the bus driver's actions contributed to the accident. While we find that the trial court erred by refusing to admit the report into evidence, the error was nonetheless harmless.

It is beyond cavil that in a negligence action, a defendant's internal rules or practices, which set forth a standard of care higher than the common-law standards of reasonable care, are not admissible. (*See e.g. Gilson v Metropolitan Opera*, 5 NY3d 574, 577 [2005]; *Branham v Loews Orpheum Cinemas, Inc.*, 31 AD3d 319 [2006], *affd* 8 NY3d 931 [2007]; *Brown v Metropolitan Tr. Auth.*, 281 AD2d 159 [2001].)

The plaintiff correctly argues that the admission of the investigative report was not barred by this rule because: (a) the report, within its four corners, did not refer to "violations of any internal rules that imposed a duty of care on the [TA] greater than that required by common law" (*see Wimbish v New York City Tr. Auth.*, 305 AD2d 586, 587 [2003]); and (b) the report's conclusions that the driver failed to enter the active intersection with caution, failed to observe and recognize a hazard, and failed to sound his horn or stop in a timely manner, all fall within the common-law standard of reasonable care that all drivers must adhere to: that motorists are to see what is there to be seen and employ reasonable care with regard to actual and potential hazards from existing road conditions. (*Quiles v Greene*, 291 AD2d 345 [2002]; *Dupont v Reisner*, 208 AD2d 375 [1994]; *O'Brien v Falmore Cab Corp.*, 18 AD2d 1078 [1963], *affd* 15 NY2d 648 [1964].)

For example, the plaintiff asserts that contrary to the TA's arguments, sounding one's horn upon seeing a child in front of

a bus does not amount to an "exacting standard of care" and a driver's failure to do so when necessary to avoid colliding with a pedestrian is evidence of negligence. (*See* Vehicle and Traffic Law § 1146; *Herbst v Balogh*, 7 AD2d 530, 533 [1959] ["defendant's obligation to sound the horn under the Traffic Regulations and her common-law obligation were coextensive"]; *Huisward v Good Humor Corp.*, 296 NY 934 [1947].)

The report was properly subject to admission as a business record under CPLR 4518. Furthermore, it should have been admitted because it contains "admissions" against the TA's interest (*see e.g. Reed v McCord*, 160 NY 330, 341 [1899]; *Asare v Ramirez*, 5 AD3d 193 [2004]), or because it contains conclusions based on an analysis by trained investigators. (*Giandana v Providence Rest Nursing Home*, 32 AD3d 126, 132 [2006], *revd on other grounds* 8 NY3d 859 [2007] ["speaking agent" exception to the hearsay rule]; *Matter of Travelers Indem. Co. v Morales*, 188 AD2d 350 [1992] [the officers/witnesses' statements concerning the intentional nature of the incident were correctly considered by the court since the officers were trained experts in accident investigation].)

In *Ramirez v Manhattan & Bronx Surface Tr. Operating Auth.* (258 AD2d 326, 327 [1999]), this Court affirmed a defense verdict, stating:

> " 'Evidence, albeit logically and technically relevant, is not necessarily admissible [and] will be excluded "if it is too slight, remote, or conjectural to have any legitimate influence in determining the fact in issue." ' (*Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 223.) Thus, the trial court properly excluded defendant's initial internal investigatory report, which, although it labeled defendant's driver 'at fault', was based on defendant's internal rules and policies that exceeded the applicable common-law negligence standard of care, and was reduced on review to a finding of 'questionable'."

In *Karoon v New York City Tr. Auth.* (286 AD2d 648, 649 [2001]), this Court, following *Ramirez*, again affirmed a defense verdict, stating in part, "[t]he report of a Manhattan and Bronx Surface Transit Operating Authority superintendent based on standards higher than those imposed on defendant by the common law was properly excluded from evidence."

These cases are simply not dispositive, nor do they enunciate a bright-line rule that all investigative reports are inadmissible.

The report at issue does not cite specific TA rules and there is nothing to indicate that the findings contained therein were overruled at a safety hearing. We recognize that the report does not employ the words "negligence" or "reasonable care" or "fault," and cites the driver's conduct as a factor "contributing" to the accident. Further, Vidal, its author, explained at his EBT that:

> "the purpose of the investigation and the document, is to use as a tool for identifying safety trends, training initiatives and actions we can take to prevent future accidents . . .

> "the conclusions as to the use of caution 'are based upon our training standards, how we train the operators . . .'

> "that the TA follows 'the national safety council standards, which basically say every accident is preventable. You do everything you reasonably can to prevent an accident . . .'; and

> "the conclusion that Talley should have sounded his horn was a violation of the way he was trained to operate a bus."

The TA argues that it evaluated the driver's conduct against its own internal standards that are more exacting than common law in that while common law recognizes that some accidents are unavoidable, the TA assumes every accident is preventable and that mere happening of an accident is proof the driver did something wrong. (*See Veal v New York City Tr. Auth.*, 148 AD2d 443, 445 [1989] [trial court erroneously instructed the jury that "the mere happening of an accident does give rise to a presumption of negligence"].) Thus, argues the TA, while the common law requires "reasonable care," the TA requires "great caution." However, there simply is nothing in the report itself that establishes that Vidal's conclusions were based on anything other than conduct which would violate negligence standards under common law. (*See Wimbish*, 305 AD2d at 587.) Merely stating that the report employed a higher standard than the common law does not make it so.

However, I concur in the result because, while the trial court committed error, it was ultimately harmless. The jury heard the driver's alleged "admission" concerning when he first saw the plaintiff in that the driver repeated the words that appear in the excluded report and explained what he meant. The plaintiff

attacked the driver's explanation in summation. Thus, the jury was aware that the driver said on a number of occasions that the bus was right on top of the plaintiff when the driver first spotted him, as opposed to that he saw the plaintiff when he came out from in front of the other bus.

The verdict is supported by a fair interpretation of the evidence (*see Nicastro v Park*, 113 AD2d 129, 133-135 [1985]; *McDermott v Coffee Beanery, Ltd.*, 9 AD3d 195, 206-207 [2004]), including the testimony of the defendants' expert and the defendant bus driver that the infant plaintiff darted into the crosswalk, against the light and in front of another bus that obstructed the driver's view, creating an emergency situation that left the driver without enough time to stop the bus before striking the plaintiff. (*See Rivera v New York City Tr. Auth.*, 77 NY2d 322, 327 [1991]; *Hassett v Budget Rent A Car of Fla.*, 209 AD2d 472 [1994].)

MARLOW and GONZALEZ, JJ., concur with KAVANAGH, J.; MAZZARELLI, J.P., and CATTERSON, J., concur in a separate opinion by CATTERSON, J.

Judgment, Supreme Court, Bronx County, entered December 19, 2005, affirmed, without costs.