| **Nazario v Bytedance Ltd.** |
| --- |
| 2025 NY Slip Op 32266(U) |
| June 27, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 151540/2024 |
| Judge: Paul A. Goetz |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:**    <u>HON. PAUL A. GOETZ</u> | **PART**             **47** |
| *Justice* | |

--------------------------------------------------------------------------------X

NORMA NAZARIO,

                         Plaintiff,

                     - v -

BYTEDANCE LTD., BYTEDANCE, INC.,TIKTOK,
INC.,META PLATFORMS, INC, METROPOLITAN
TRANSPORTATION AUTHORITY, NEW YORK CITY
TRANSIT AUTHORITY,

                         Defendants.

--------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | <u>151540/2024</u> |
| **MOTION DATE** | 05/29/2024, <br> 09/16/2024 |
| **MOTION SEQ. NO.** | <u>003 004</u> |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 22, 23, 24, 25, 32, 33, 34, 35, 56, 77, 84, 85, 87, 88, 89

were read on this motion to/for                 <u>           DISMISSAL           </u> .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 57, 58, 59, 60, 61, 65, 72, 73, 74, 75

were read on this motion to/for                 <u>           DISMISSAL           </u> .

In this wrongful death action arising from a teenager's death while "subway surfing," defendants ByteDance Inc., TikTok Inc., and Meta Platforms Inc. (the social media defendants)[1] move pursuant to CPLR § 3211(a) to dismiss each cause of action against them (MS #3); and defendants Metropolitan Transportation Authority (the MTA) and New York City Transit Authority (the NYC TA) (transit defendants) move pursuant to CPLR § 3211(a)(7) to dismiss the complaint as against them and/or pursuant to CPLR § 3212(c) for summary judgment dismissing the complaint as against them (MS #4).

---

[1] According to the social media defendants, "Defendant ByteDance Ltd. has not been served in this action and is not a party to this motion" (NYSCEF Doc No 23).

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**                      **Page 1 of 19**
   **Motion No.  003 004**

## BACKGROUND

On February 20, 2023, fifteen-year-old Zackery Nazario and his girlfriend boarded a Brooklyn-bound J train (NYSCEF Doc No 3 ¶ 158). Together, they opened an unlocked train door and climbed on top of the moving train (*id.*). As the train crossed the Williamsburg Bridge, Zackery, who turned around to look at his girlfriend, was struck in the head by a low beam (*id.*). Zackery fell between the subway cars, which ran over him, and he died at the scene (*id.*).

Plaintiff Norma Nazario, Zackery's mother, alleges that "[b]y late 2022, Zackery had become addicted to [] Instagram and TikTok," social media platforms owned by the social media defendants (*id.*, ¶ 161). Following Zackery's death, plaintiff accessed his accounts and discovered that he had come across content that encouraged "subway surfing," a dangerous trend of climbing on top of and riding moving subway cars (*id.*, ¶ 154).

Plaintiff alleges that "[a]s a result of the unreasonably dangerous design of Social Media Defendants' products, Zachary was targeted, goaded and encouraged to engage in Subway Surfing" (*id.*, ¶ 2). More specifically, plaintiff alleges that the social media defendants:

- "Are engaging in a pattern and practice of deceiving the American public through false representations and assurances as to the safety and security of their social media products . . . to promote and instill familiarity and trust" (*id.*, ¶ 3);

- Design their apps "to optimize for two closely related metrics[:] 'retention'—that is, whether a user comes back—and 'time spent'" (*id.*, ¶ 80), "prioritiz[ing] engagement over user safety" (*id.*, ¶ 85) in order to "keep [the] user scrolling" (*id.*, ¶ 101);

- "Market and design the TikTok and Instagram social media products to be used by minors" (*id.*, ¶ 77) and "deliberately tweaked the design and operation of their apps to exploit the psychology and neurophysiology of kids like Zackery" who, due to their age, "are uniquely susceptible to addictive features in digital products and highly vulnerable to the consequent harms" (*id.*, ¶ 156);

- "Knew, or in the exercise of ordinary care should have known, that their social media products are addictive to young users and directs them to highly dangerous content

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**                    **Page 2 of 19**
**Motion No.  003 004**

INDEX NO. 151540/2024
RECEIVED NYSCEF: 06/27/2025

promoting self-harm and dangerous challenges yet failed to re-design their products to ameliorate these harms or warn minor users and their parents of dangers arising out of the foreseeable use of their products" (*id.*, ¶ 7);

- "Push material to teens and children that Defendants know to be problematic and highly detrimental to their minor users' mental and physical health" (*id.*, ¶ 4) and use "algorithms [that] directed exceedingly and unacceptably dangerous challenges and videos to Zackery's [For You Page (FYP)], thus encouraging him to engage and participate in the challenges, directly causing [] Zackery's death" (*id.*, ¶ 75); and

- "Become actively involved in the creation of certain content in a manner and to the degree of a material creator or co-creator," including by, *inter alia*, recommending video enhancements, prompting users to "go live" or post certain kinds of content, curating on-theme music for posts, and amplifying certain accounts (*id.*, ¶¶ 88-94).

Plaintiff's causes of action include: (i) strict product liability based on design defect, against the social media defendants; (ii) strict product liability based on failure to warn, against the social media defendants; (iii)-(iv) negligence, against the social media defendants; (v) negligence, against the transit defendants (vi) wrongful death, against all defendants; (vii) personal injury, against all defendants; (viii) General Business Law (GBL) §§ 349 and 350, against the social media defendants; (ix) unjust enrichment, against the social media defendants; (xi) intentional infliction of emotional distress (IIED), against the social media defendants; (xii) joint and several liability, against all defendants; and (xiii) loss of services, against all defendants (*id.*).[2]

By decision and order dated December 12, 2024, the social media defendants' motion to sever the action as against them was denied (MS #2, NYSCEF Doc No 76).

On January 30, 2025, counsel for plaintiff and the social media defendants appeared for oral argument on MS #3.

---

[2] There is no tenth cause of action.

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**
**Motion No.  003 004**

**Page 3 of 19**

[* 3]

## DISCUSSION

Standard on the Motions

When reviewing a "motion to dismiss for failure to state a cause of action pursuant to CPLR 3211(a)(7), [courts] must accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every reasonable inference, and determine only whether the facts, as alleged fit within any cognizable legal theory" (*Bangladesh Bank v Rizal Commercial Banking Corp.*, 226 AD3d 60, 85-86 [1st Dept 2024] [internal quotations omitted]). "In making this determination, [a court is] not authorized to assess the merits of the complaint or any of its factual allegations" (*id*. at 86 [internal quotations omitted]). "However, factual allegations that do not state a viable cause of action [or] consist of bare legal conclusions . . . are not entitled to such consideration" (*Doe v Bloomberg, L.P.*, 178 AD3d 44, 47 [1st Dept 2019], quoting *Skillgames, LLC v Brody*, 1 AD3d 247, 250 [1st Dept 2003]).

Social Media Defendants' Motion (MS #3)

  i.  *Section 230 of the Communications Decency Act (CDA)*

Section 230 of the Communications Decency Act (CDA) provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" (CDA § 230). "Both state and federal courts around the country have generally interpreted Section 230 immunity broadly, so as to effectuate Congress's policy choice . . . not to deter harmful online speech through the . . . route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages" (*Shiamili v Real Estate Group of N.Y., Inc.*, 17 NY3d 281, 288 [2011], citing *Universal Commun. Sys. v Lycos, Inc.*, 478 F3d 413 [1st Cir 2007] [internal quotation marks omitted]). The "national consensus," including in "New York trial courts," has been to "read

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**
Motion No.  003 004

**Page 4 of 19**

section 230 as generally immunizing Internet service providers from liability for third-party content wherever such liability depends on characterizing the provider as a 'publisher or speaker' of objectionable material" (*id.* at 288-89). This includes "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions--such as deciding whether to publish, withdraw, postpone or alter content" (*id.*, quoting *Zeran v Am. Online, Inc.*, 129 F3d 327, 330 [4th Cir 1997]). Thus, Section 230 "shields conduct if the defendant (1) is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat [the defendant] as the publisher or speaker of that information" (*FTC v LeadClick Media, LLC*, 838 F3d 158, 173 [2nd Cir 2016] [internal quotation marks omitted]). Additionally, "a website may lose immunity under the CDA by making a material contribution to the creation or development of content" (*Kimzey v Yelp! Inc.*, 836 F3d 1263, 1269 [9th Cir 2016]).

The social media defendants argue that plaintiff's first through fourth causes of action against them for product liability and negligence are barred by Section 230 of the CDA. Specifically, they assert that they are interactive service providers (ISPs); plaintiff's claims are based on the subway surfing content provided entirely by third-party users; and plaintiff is improperly treating them as the publishers of users' content "by seeking to impose liability for the dissemination of third-party content through features available on the Social Media Defendants' services" (NYSCEF Doc No 23). In opposition, plaintiff argues that her product liability and negligence claims do not treat the social media defendants as publishers based on content moderation or editorial decisions, but rather as product manufacturers based on their failure to design a reasonably safe product and furnish adequate warnings of foreseeable dangers arising from their products (NYSCEF Doc No 35). She asserts that "[c]ontrary to Defendants'

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**
**Motion No.  003 004**

**Page 5 of 19**

5 of 19

contentions, Instagram and TikTok are 'products' under New York law," as evidenced by their use of "algorithms [which] directed [Zackery]—unsolicited—to increasingly extreme and dangerous content" (NYSCEF Doc No 35).

The parties do not dispute that the social media defendants meet the first element of the CDA immunity test, as they are providers of interactive computer services which primarily serve as platforms for third-party expression. Plaintiff argues, however, that the second element (that plaintiff's claims be based on content provided solely by a third party) has not been met because the social media defendants "materially contributed to the subway surfing videos that Zackery encountered on their platforms . . . by augmenting third party content with headings, memes, music, advertisements, lyrics and videos and are therefore co-publishers of the content at issue" (NYSCEF Doc No 35). The parties also dispute whether the third requirement (that plaintiff treat the social media defendants as the publishers or speakers of third-party content) is met.

Pursuant to Section 230, if the social media defendants were "responsible, in whole or in part, for the creation or development of information," they would be considered "information content provider[s]" falling outside of the statute's protections (CDA § 230). "[A] defendant will not be considered to have developed third-party content unless the defendant directly and 'materially' contributed to what made the content itself 'unlawful'" (*Force v Facebook, Inc.*, 934 F3d 53, 68 [2nd Cir 2019]). "This 'material contribution' test [] 'draw[s] the line at the crucial distinction between, on the one hand, taking actions [to display] actionable content and, on the other hand, responsibility for what makes the displayed content [itself] illegal or actionable" (*id.*, quoting *Kimzey*, 836 F3d at 1269 n.4).

Here, the social media defendants make features available to users to personalize their content and make it more engaging. Plaintiff asserts that "the music, stickers, self-generated

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**
**Motion No.  003 004**

**Page 6 of 19**

lyrics and formatting that Instagram and TikTok created to augment the Subway Surfing videos that Zackery viewed on their platform made this activity appear more attractive and less dangerous" (NYSCEF Doc No 35). However, by supplying a platform and library of add-on features, the social media defendants are merely "taking actions [to display] actionable content" rather than actually contributing to "what makes the displayed content [] actionable" (*Force*, 934 F3d at 68). It is the user, not the social media defendants, that selects what features to add to their posts, if any. Plaintiff compares the facts of this case to *Shiamili,* in which the court determined that "[d]efendants appear to have been 'content providers' with respect to the heading, subheading, and illustration that accompanied the reposting" (17 NY3d at 292 [determining, however, that the added content was not defamatory]). However, unlike the defendants in *Shiamili*, the social media defendants did not make any editorial decisions in the subway surfing content; the user, alone, personalizes their own posts.[3] Therefore, the social media defendants have not "materially contributed" to the development of the content such that they may be considered co-creators.

Plaintiff alleges, however, that the social media defendants' algorithm goes beyond mere publication or display of content and into the realm of targeting users such as Zackery with certain kinds of content. As the social media defendants note, courts have consistently held defendants immune from liability under the CDA because their use of algorithms to promote content amount to traditional publisher functions (*Moody v NetChoice, LLC*, 603 US 707, 746 [2024]; *Doe v Grindr Inc.*, 128 F.4th 1148, 1153 [9th Cir 2025]; *Gonzalez v Google LLC*, 2 F4th 871 [9th Cir 2021], *cert granted*, 598 US 617 [2023] [declined to address application of Section

---

[3] See also *Lemmon v Snap, Inc.*, 995 F3d 1085 [9th Cir 2021], in which the decedents died in a high-speed car accident while using Snapchat's speed filter. Here, in contrast, it is not alleged that the applications' add-on features, in and of themselves, inspired Zackery to engage in the dangerous activity.

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**
**Motion No.  003 004**

Page 7 of 19

230]). For example, in *Force*, the Second Circuit Court of Appeals held: "we find no basis . . . for concluding that an interactive computer service is not the 'publisher' of third-party information when it uses tools such as algorithms that are designed to match that information with a consumer's interests" (934 F3d at 66). The court further noted that "[m]erely arranging and displaying others' content to users of Facebook through such algorithms—even if the content is not actively sought by those users—is not enough to hold Facebook responsible as the 'develop[er]' or 'creat[or]' of that content" (*id.* at 70).

However, the algorithms used to recommend content in those cases were considered non-actionable because the algorithms were "content neutral" or based on user inputs (*Moody*, 603 US at 734-35 ["The selection and ranking [of content to display] is most often based on a user's expressed interests and past activities"]; *Grindr*, 128 F4th at 1153 [comparing Grindr's matching function to the "neutral features" used to recommend content in *Dyroff v Ultimate Software Grp., Inc.*, 934 F.3d 1093 [9th Cir 2019]]; *Gonzalez*, 2 F4th at 894 ["Though we accept as true the TAC's allegation that Google's algorithms recommend ISIS content to users, the algorithms do not treat ISIS-created content differently than any other third-party created content, and thus are entitled to § 230 immunity . . . Google's algorithms select the particular content provided to a user *based on that user's inputs*"] [emphasis added]; *Force*, 934 F3d at 70 ["Plaintiffs' allegations likewise indicate that Facebook's algorithms are content 'neutral'"]).[4] In contrast, here, plaintiff alleges that "Zackery Nazario did not open or use TikTok or Instagram to search for dangerous challenges," yet the social media defendants "continued to flood Zackery – a minor – with material he was not interested in and did not want to see" (NYSCEF Doc No 3).

---

[4] See also, *In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*, 753 F Supp 3d, 882 [ND Cal 2024] ["Recommendation algorithms, *absent allegations to the contrary*, serve a 'content-neutral' function for the dissemination of third-party content immune from liability under Section 230"] [emphasis provided]).

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**                                    **Page 8 of 19**
**Motion No.  003 004**

Plaintiff's claims, therefore, are not based on the social media defendants' mere display of popular or user-solicited third-party content, but on their alleged active choice to inundate Zackery with content he did not seek involving dangerous "challenges." Plaintiff alleges that this content was purposefully fed to Zackery because of his age, as such content is popular with younger audiences and keeps them on the social media defendants' applications for longer, and not because of any user inputs that indicated he was interested in seeing such content. Thus, based on the allegations in the complaint, which must be accepted as true on a motion to dismiss, it is plausible that the social media defendants' role exceeded that of neutral assistance in promoting content, and constituted active identification of users who would be most impacted by the content (*Nat'l Coalition on Black Civic Participation v Wohl*, 2021 U.S. Dist. LEXIS 177589, *8, 26-27 [SDNY 2021] [communications company "identifi[ed] predominantly Black zip codes to amplify the intimidating nature of the robocall message and thereby achieve the goal of voter suppression"]; *Patterson v Meta Platforms, Inc.*, 2024 N.Y. Misc. LEXIS 2312, *4-5 [SC Erie Co 2024] [denying defendant's motion to dismiss where plaintiffs alleged that Meta hosts "sophisticated products designed to be addictive to young users and they specifically directed Gendron to [] postings that indoctrinated him with 'white replacement theory'"]).

The Third Circuit Court of Appeals decision in *Anderson v TikTok, Inc.*, 116 F.4th 180 [3rd Cir 2024] is instructive. There, TikTok's FYP recommended a "blackout challenge" to a ten-year old girl; "after watching it, Nylah attempted to replicate what she saw and died of asphyxiation" (*id.* at 182). The plaintiff, Nylah's mother, alleged that "TikTok's FYP algorithm was defectively designed because it 'recommended' and 'promoted' the Blackout Challenge" to minors (*id.* at 184). The court held that Section 230 did not bar plaintiff's claims because the algorithm amounted to TikTok's first-party speech, noting: "TikTok's algorithm is not based

151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL
Motion No.  003 004

Page 9 of 19

[* 9]

solely on a user's online inputs. Rather, the algorithm curates and recommends a tailored compilation of videos for a user's FYP based on a variety of factors, including the user's age and other demographics, online interactions, and other metadata" (*id.* at 182). This is in contrast to *Gonzalez*, for example, where the court held that the plaintiff's claims were barred by Section 230, as the "complaint [was] devoid of any allegations that Google specifically targeted ISIS content . . . Instead, the Gonzalez Plaintiffs' allegations suggest that Google provided a neutral platform that did not specify or prompt the type of content to be submitted, nor determine particular types of content its algorithms would promote" (2 F4th at 895).

Notably, plaintiff does not demand that the social media defendants take on "a publisher's traditional editorial functions--such as deciding whether to publish, withdraw, postpone or alter content" (*Shiamili*, 17 NY3d at 288; *Nasca v Bytedance Ltd.*, 2025 NY Misc LEXIS 2255 [SC Suffolk Co 2025] [plaintiffs "admit[tedly allege] that Chase died because TikTok failed to adequately monitor and remove suicidal content. Accordingly, plaintiffs seek to hold defendants liable for its exercise of a publisher's traditional editorial functions"]). Rather, plaintiff asserts that the social media defendants should not be permitted to actively target young users of its applications with dangerous "challenges" before the user gives any indication that they are specifically interested in such content and without warning. If the social media defendants are in fact targeting children as alleged in the complaint, they "could [] satisf[y] [their] alleged obligation—to take reasonable measures to design a product more useful than it was foreseeably dangerous—without altering the content that [their] users generate" (*Lemmon*, 995 F3d at 1092 [internal quotation marks omitted]). Nor would "[t]he duty to warn [] require [the social media defendants] to remove any user content or otherwise affect how it publishes or monitors such content" (*Doe v Internet Brands, Inc.*, 824 F3d 846, 851 [9th Cir 2016]).

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**
**Motion No.  003 004**

**Page 10 of 19**

10 of 19

The social media defendants rigorously argue "that their platforms are . . . subject[] to the protections of the CDA" and that their "platforms are not products" (*Patterson*, 2024 N.Y. Misc. LEXIS 2312 at *8-9). "This may ultimately prove true, however, without the benefit of discovery to illuminate how Zackery was directed to the subway surfing content, "the Court must base its ruling on the allegations of the complaint and not 'facts' asserted by the defendants in their briefs or during oral argument and those allegations allege viable causes of action under a products liability theory" (*id.*). Therefore, plaintiff's first through fourth causes of action sounding in product liability and negligence will not be dismissed as barred by Section 230.

  *ii.*  *First Amendment*

The social media defendants argue that plaintiff's claims are nevertheless barred by the First Amendment because plaintiff essentially argues that the applications are defective and harmful "because of the allegedly damaging consequences of speech on those services and the manner in which the Social Media Defendants organize and disseminate that speech" (NYSCEF Doc No 23). Plaintiff argues that the First Amendment does not apply here because plaintiff does not seek to impose liability based on any form of speech by the social media defendants, but based on their tortious *conduct* of designing, profiting, and failing to warn of the dangers of their products (NYSCEF Doc No 35).

Similar to the question of whether the applications are products or services, the question of whether the social media defendants engaged in protected speech or tortious conduct should be determined at a later date with the benefit of discovery into the operation of the algorithms used (*Patterson*, 2024 N.Y. Misc. LEXIS 2312 at *8-9 ["the social media[] defendants have attempted to establish that their platforms are mere message boards . . . subjecting them to the protections of the [] First Amendment. This may ultimately prove true," but will not be decided

**151540/2024 NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**
**Motion No. 003 004**

**Page 11 of 19**

11 of 19

"at this stage of the litigation"]). Therefore, plaintiff's first through fourth causes of action sounding in product liability and negligence will not be dismissed as violative of the social media defendants' First Amendment rights.

### iii. *Remaining Arguments and Causes of Action*

The social media defendants' remaining arguments for dismissal of plaintiff's product liability and negligence claims—failure to state a claim and lack of personal jurisdiction— are unavailing. Specifically, plaintiff has adequately stated each element of her causes of action for products liability and negligence by alleging, *inter alia*, that the social media defendants breached their duty of care by designing addictive and dangerous products (and failing to warn of the dangers those products posed) and that Zackery died as a result of that breach (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102 [1983]). Additionally, the court has personal jurisdiction over the social media defendants because plaintiff alleges that the social media defendants derive substantial revenue from New York state and specifically target New York City residents such as Zackery with subway surfing content, and plaintiff's causes of action arise from those purposeful contacts (CPLR § 302).

As the social media defendants note, plaintiff failed to respond to their arguments for dismissal of her eighth cause of action for violation of GBL §§ 349 and 350, ninth cause of action for unjust enrichment, and eleventh cause of action for intentional infliction of emotional distress. Therefore, these causes of action will be dismissed as abandoned (*Delanerolle v St Catherine of Sienna Med. Ctr.*, 231 AD3d 1013, 1015 [2nd Dept 2024] ["the plaintiff abandoned those causes of action by failing to address them in opposition to the defendants' motion" to dismiss]).

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**                                    **Page 12 of 19**
**Motion No.  003 004**

12 of 19

The social media defendants argue that plaintiff's sixth cause of action for wrongful death, seventh cause of action for personal injury, twelfth cause of action for joint and several liability, and thirteenth cause of action for loss of services all fail because plaintiff has not identified an independent basis for liability. Plaintiff argues that because her product liability and negligence claims should survive the instant motion, her "derivative claims should be maintained, including wrongful death, loss of consortium, and punitive damages" (NYSCEF Doc No 35).

The wrongful death claim will not be dismissed because plaintiff has adequately alleged each element of this cause of action (*James v Middletown Community Health Ctr., Inc.*, 278 AD2d 280, 281 [2nd Dept 2000] [a plaintiff must establish (1) the death of a human being, (2) the wrongful act, neglect or default of the defendant by which the decedent's death was caused, (3) the survival of distributees who suffered pecuniary loss by reason of the death of decedent, and (4) the appointment of a personal representative of the decedent]) and "[t]he law of this State is clear that a wrongful death cause of action is a separate and distinct cause of action to redress the injuries suffered by a decedent's [survivors] as a result of the decedent's death" (*Marinos v Brahaj*, 2025 NY Slip Op 03561, *2 [2nd Dept 2025]). The personal injury cause of action will be dismissed because as the social media defendants note, "personal injury is part of the damages plaintiff seeks for her negligence [] claims" (*Musk v 13-21 E. 22nd St. Residence Corp.*, 2012 NY Slip Op 33021[U], *9 [SC NY Co 2012] [dismissing and "consolidating the damages claims contained within" the personal injury cause of action into plaintiff's negligence cause of action]) and plaintiff did not address this issue in her opposition (NYSCEF Doc No 35). Additionally, plaintiff failed to refute the social media defendants' argument that her twelfth cause of action for joint and several liability fails because "[j]oint and several liability is a rule of contribution,

151540/2024  NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL
Motion No.  003 004

Page 13 of 19

13 of 19

not a cause of action" (*DelleFave v Access Temporaries, Inc.*, 2000 U.S. Dist. LEXIS 347 *9 [SDNY 2000]; NYSCEF Doc No 35 [only discussing the exceptions to limited liability under CPLR § 1602]), and therefore it will be dismissed. Plaintiff's loss of services cause of action will not be dismissed because, while "derivative in nature," the "primary causes of action" on which it is based have yet to be determined (*Taggart v Costabile*, 131 AD3d 243, 257 [2nd Dept 2015]).

Accordingly, the social media defendants' motion to dismiss the complaint as against them will be granted with respect to plaintiff's seventh cause of action for personal injury, eighth cause of action for violation of GBL §§ 349 and 350, ninth cause of action for unjust enrichment, eleventh cause of action for intentional infliction of emotional distress, and twelfth cause of action for joint and several liability; and will otherwise be denied.

Transit Defendants' Motion (MS #4)

Plaintiff alleges that the transit defendants were negligent in failing to: lock the subway car doors or place barriers preventing passenger access to subway car roofs; have more employees present on trains to monitor riders; and post warning signs, though they were aware of the dangerous subway surfing trend (NYSCEF Doc No 3). The transit defendants move to dismiss (or for summary judgment dismissing) plaintiff's complaint as against them on the grounds that they are immune from liability based on governmental qualified immunity; they cannot be held liable for Zackery's "own reckless, extraordinary, highly dangerous and criminal conduct which constitutes an intervening and superseding event that severs the chain of negligence"[5]; and the MTA does not own, operate, maintain, or control the subway trains (NYSCEF Doc No 58).

---

[5] The transit defendants also note that Zackery knew that subway surfing was "highly dangerous and potentially deadly" (*id.*); plaintiff testified that before Zackery's death, she cautioned him against subway surfing, having heard about it on the news (NYSCEF Doc No 61, pp. 39-40 [telling Zackery it was "dangerous and people died" from it]).

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**
**Motion No.  003 004**

**Page 14 of 19**

[* 14]

14 of 19

The transit defendants are correct that "[i]t is well settled, as a matter of law, that the functions of the MTA with respect to public transportation are limited to financing and planning, and do not include the operation, maintenance, and control of any facility" (*Robles v City of New York*, 235 AD3d 674, 675-76 [2nd Dept 2025], quoting *Cusick v Lutheran Medical Center*, 105 AD2d 681, 681 [2nd Dept 1984]). "Here, there is no dispute that the MTA's alleged liability is premised upon matters concerning the operation, maintenance, and control of the area of [the subway on which] the accident occurred, which are outside the scope of the MTA's functions" (*id.*). Therefore, plaintiff's causes of action fail as against the MTA.

As the transit defendants note, the NYCTA's "determination whether or not to lock the doors of subway cars is a governmental safety decision subject to the qualified immunity doctrine" (*Zambrana v N.Y. City Transit Auth.*, 14 AD3d 23, 25 [1st Dept 2004] ["a conscious decision on the part of TA to keep car doors unlocked and to afford a ready means of escape is a valid governmental policy choice concerning the dangers posed to riders who might become trapped below ground as the result of a mishap, as opposed to the danger that a passenger might be injured as a result of voluntarily moving between cars"]). However, as plaintiff notes, keeping the doors unlocked is not the only failing she alleged; she also asserts that the transit defendants should have placed "barriers" preventing passenger access to subway car roofs, hired more personnel to adequately monitor riders, and posted warning signs. The transit defendants reply that Zackery's own reckless conduct was the superseding and sole proximate cause of his death.

"Some activities are so obviously fraught with danger that by their very nature they evince a wanton disregard for the actor's own personal safety or well-being" (*Lynch v Metropolitan Transp. Auth.*, 82 AD3d 716, 717 [2nd Dept 2011]). "In such circumstances, the actor's conduct is an intervening and superseding event which severs any causal nexus between

151540/2024  NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL
Motion No.  003 004

Page 15 of 19

15 of 19

[* 15]

the occurrence of the accident and any alleged negligence on the part of the defendants" (*id.*). "Whether a [decedent's] act is a superseding cause or whether it is a normal consequence of the situation created by a defendant are typically questions to be determined by the trier of fact" (*Dumbadze v Schwatt*, 291 AD2d 529, 529 [2nd Dept 2002]). "However, the issue of proximate cause may be decided as a matter of law where only one conclusion may be drawn from the established facts" (*Kalland v Hungry Harbor Assoc., LLC*, 84 AD3d 889, 889 [2nd Dept 2011]).

While plaintiff argues that the transit defendants "cite no authority holding that children, whose brains are still developing, would recognize subway surfing to be so obviously fraught with danger as to evince a wanton disregard for the child's own safety," the transit defendants have in fact cited several cases which support this conclusion (NYSCEF Doc No 72). In *Lynch*, for example, an intoxicated 16-year-old was stuck and killed by a train while walking along the Long Island Railroad tracks. The court determined that the teenager's "conduct was so reckless as to constitute an intervening and unforeseeable act which broke any causal connection between his death and any alleged negligence on the part of the defendants" (82 AD3d at 717). In *de Pena v New York City Transit Auth.*, 236 AD2d 209 [1st Dept 1997], also cited by the transit defendants, three 13-year-old boys used an emergency doorway to gain access to a subway tunnel, and one of them was killed when, attempting to avoid an oncoming train, he slipped on an electrified rail. The First Department found that the trial court improperly denied the defendant's motion for summary judgment dismissing the complaint because "[t]he recklessness of this activity should have been so obvious, even to City lads of such tender age, that the case should have been dismissed before trial" (*id.*). Additionally, in *Mooney v Long Island R.R.*, 305 AD2d 560 [2nd Dept 2003], the court determined that "[t]he sole proximate cause of the infant plaintiffs' injuries was their reckless behavior in proceeding around a safety gate in the down

**151540/2024  NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**
**Motion No.  003 004**

**Page 16 of 19**

16 of 19

position and crossing the tracks directly behind an eastbound train without first checking to see if a westbound train was approaching" (*id.* at 560).

Moreover, while subway surfing may be a new trend, there are analogous cases involving minors "elevator surfing." In *Tillmon v New York City Hous. Auth.*, for example, a "decedent [] just shy of 14 years old . . . climbed out of [an elevator] car through the escape hatch and [was] on top of the car, while two others were inside the car causing it to go up and down or stop" (*id.* at 19). Like Zackery, the decedent was tragically killed when his head hit a concrete beam in the elevator shaft (*id.*). The court determined that the decedent "should have understood" the dangers involved in the activity of elevator surfing and that "the proximate cause of decedent's death was his own willful behavior" (*id.* at 20; see also *Gaither v City of New York*, 300 AD2d 255, 256 [1st Dept 2002] ["The motion court, in granting defendant Housing Authority's motion for summary judgment dismissing the complaint, properly held that the proximate cause of decedent's death was his own willful behavior in engaging in the hazardous and illegal activity known as 'elevator surfing,' and compensation should not be awarded in such circumstances"]; *Estate of McMillan v New York City Hous. Auth.*, 266 AD2d 153, 153 [1st Dept 1999] [12-year-old decedent "was old enough to be cognizant of the very great and obvious risks involved in 'elevator surfing'"]).

Finally, "to hold that [Zackery]—clearly no stranger[] to the subway system—[was] not aware of the extreme hazard in [subway surfing,] would be to ignore the realities of life in this City" (*de Pena*, 236 AD2d at 210). "Regardless of warnings that may or may not have been posted on the subway," such warnings "would be superfluous [since the] risk and danger are obvious as a matter of common sense" (*id.*; see also *Brown v Metropolitan Transit Auth.*, 281 AD2d 159, 161 [1st Dept 2001] ["defendants had no duty to warn of a danger that could have been easily recognized or discovered by the normal use of one's senses"]).

**151540/2024  NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**
**Motion No.  003 004**

**Page 17 of 19**

17 of 19

Accordingly, the transit defendants' motion to dismiss the complaint as against them will be granted.

**CONCLUSION**

Based on the foregoing, it is

ORDERED that the social media defendants' motion to dismiss the complaint as against them (MS #3) is granted with respect to plaintiff's seventh cause of action for personal injury, eighth cause of action for violation of GBL §§ 349 and 350, ninth cause of action for unjust enrichment, eleventh cause of action for intentional infliction of emotional distress, and twelfth cause of action for joint and several liability; and is otherwise denied; and it is further

ORDERED that the transit defendants' motion to dismiss (MS #4) is granted in its entirety and the complaint is dismissed as against them, with costs and disbursements to the transit defendants as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly; and it is further

ORDERED that the action is severed and continued against the remaining defendants; and it is therefore

ORDERED that the caption in this matter is hereby amended as follows:

NORMA NAZARIO,

Plaintiff,

- v –

BYTEDANCE LTD., BYTEDANCE, INC., TIKTOK, INC.,
META PLATFORMS, INC,

Defendants.

And it is further

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**
**Motion No.  003 004**

**Page 18 of 19**

ORDERED that all papers, pleadings, and proceedings in the above-entitled action be amended in accordance with this change, without prejudice to the proceedings heretofore had herein; and it is further

ORDERED that the transit defendants shall, within 30 days of entry of this order, serve a copy of this order with notice of entry upon the County Clerk and the Clerk of the General Clerk's Office, who are directed to mark the court's records to reflect the change in the caption herein; and it is further

ORDERED that such service upon the County Clerk and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website).

20250627141941PGOETZ0287910A30F418AA3F897F833D11F44

| 6/27/2025 | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | | PAUL A. GOETZ, J.S.C. | |
| CHECK ONE: | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | | |
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER | |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE | |

**151540/2024   NAZARIO, NORMA vs. BYTEDANCE LTD. ET AL**
**Motion No.  003 004**

Page 19 of 19

19 of 19